**<u>NOT FOR PUBLICATION</u>**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MONTVALE SURGICAL CENTER, a/s/o DANIEL ROSE<br><br>      Plaintiff, | Civ. No. 12-2842 (DRD) |
| v. | **O P I N I O N** |
| HORIZONE BLUE CROSS BLUE SHIELD OF NEW JERSEY, INC., DISTRICT COUNCIL IRONWORKERS FUNDS OF NOTHERN NEW JERSEY, ABC CORP. 1-10,<br><br>      Defendants. | |

*Appearances by:*

MASSOOD & BRONSNICK, LLC
By: Andrew R. Bronsnick, Esq.
50 Packanack Lake Road
Wayne, New Jersey 07479

   *Attorneys for Plaintiff*

CONNELL FOLEY LLP
By: Edward S. Wardell, Esq.
  Matthew A. Baker, Esq.
457 Haddonfield Rd., Ste. 230
Cherry Hill, New Jersey 08002

   *Attorneys for Defendant Horizon Blue Cross Blue Shield of New Jersey*

CLEARY, JOSEM & TRIGIANI LLP
By: Regina C. Hertzig, Esq.

One Liberty Place, 51st Floor
1650 Market Street
Philadelphia, Pennsylvania 19103

*Attorneys for Defendant District Council Ironworkers Funds of Northern New Jersey*

**<u>DEBEVOISE, Senior District Judge</u>**

This matter arises out of Defendant District Council Ironworkers Funds of New Jersey's ("the Fund") willingness to pay a fraction of the amount claimed by Plaintiff Montvale Surgical Center ("Montvale") for medical care.  On March 7, 2012, Montvale filed a Complaint in New Jersey Superior Court against the Fund and Horizon Blue Cross Blue Shield of New Jersey ("Horizon"), setting forth claims for breach of contract, promissory estoppels, negligent misrepresentation, and unjust enrichment, and seeking compensatory damages, costs, interest, and attorney's fees.

On May 11, 2012, Defendants removed the Complaint to this Court pursuant to 28 U.S.C. §§ 1441 and 1446.  Defendants now move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  For the reasons set forth below, Defendants' motion is GRANTED.

## I.     BACKGROUND

The Fund is a benefit plan for Northern New Jersey Ironworkers and their family members that "is administered by a joint Board of Trustees" (Baker Cert., Ex. A) in accordance with the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 <u>et</u> <u>seq.</u>  The Fund includes a self-funded health insurance plan ("the Plan") that reimburses medical expenses that the Fund deems reasonable, medically necessary, and appropriate, and that result from a non-occupational illness or injury.  Horizon, a non-profit health service corporation, serves as a third-party that performs certain administrative services for the Plan.  However, benefits under the Plan are paid by the Fund, and the Fund makes all final claims decisions.

2

The Fund provides a publicly available Summary Plan Description ("SPD") on its website.[1]  The SPD sets forth a two-level review process of post-service hospital and medical claims.  A claimant must first submit an appeal to Horizon, who will render a decision within thirty days.  If the claimant is "dissatisfied with the decision of the first appeal, [the claimant] may submit a second appeal to the Board of Trustees within 180 days of the receipt of the first decision."  (Baker Cert., Ex. A.)  The Board of Trustees will render a decision "within thirty days of receipt for the second level of appeal."  (Id.)  In addition, the SPD expressly prevents parties from bringing "a lawsuit to obtain benefits until after you have requested a review and a final decision has been reached on review. . . ."  (Id.)

On June 28, 2010, Daniel Rose, a subscriber to the Plan, had multiple paravertebral facet joint injections under fluoroscopic guidance performed at Montvale, an outpatient ambulatory surgery center ("ASC").  Upon receipt of this care, Mr. Rose executed an Assignment of Benefits agreement with Montvale, "which transferred his contractual and legal rights under the policy of group health" to Montvale.  (Compl. ¶ 6.)  The Fund deems Montvale an out of network medical provider.

On July 7, 2010, Montvale sought payment from Horizon for Mr. Rose's procedures in the amount of $29,490.00, but was only reimbursed for $1,285.20.  On August 12, 2010, Montvale submitted an appeal to Horizon appealing the amount of reimbursement as neither reasonable nor customary.   Attached to the appeal was "a copy of [Mr. Rose's] benefits for ASC's."  (Bronsnick Cert., Ex. C.)  On October 17, 2010, Horizon submitted a letter to Montvale denying the appeal and stating that the "claim [was] processed accurately based on your non-participating status and the patient's benefit coverage."  (Bronsnick Cert., Ex. D.)  On December

---

[1] The SPD is available at http://www2.ironnj.com/uploads/pdf/welfare.pdf.

14, 2010, Montvale submitted a letter entitled "2nd LEVEL APPEAL" to Horizon, which again disputed the amount of reimbursement as neither reasonable nor customary and stated that "there are no limitations in the patient's plan description that would limit an ASC reimbursement." (Bronsnick Cert., Ex. E.)  The letter also requested a copy of the SPD on behalf of Mr. Rose.  On January 16, 2011, Horizon issued a letter to Montvale stating that "[t]here are no second level appeal rights under the terms and conditions of the subscriber's Administrative Services Account."  (Bronsnick Cert., Ex. F.)

## II.    DISCUSSION

Defendants now move to dismiss Montvale's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  In doing so, they argue that (1) ERISA preempts Montvale's state law claims; and (2) Montvale failed to exhaust the mandatory administrative appeals process under the Plan.  Montvale argues that (1) the Plan's appeals process was not mandatory; (2) it nonetheless exhausted two levels of review; and (3) further appeals would have been futile.

## A.    Standard of Review

In assessing the parties' arguments, the Court must apply the standard of review applicable to requests for dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).  That rule permits a court to dismiss a complaint for failure to state a claim upon which relief can be granted.  When considering a Rule 12(b)(6) motion, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  The Court's inquiry, however, "is not whether plaintiffs will ultimately prevail in a trial on the merits, but whether they should be afforded an opportunity to offer evidence in support of their claims."  In re Rockefeller Ctr. Prop., Inc., 311 F.3d 198, 215 (3d Cir. 2002).

The Supreme Court recently clarified the Rule 12(b)(6) standard in two cases:  Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009), and Bell Atlantic Corporation v. Twombly, 550 U.S. 544 (2007).  The decisions in those cases abrogated the rule established in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief."  In contrast, Bell Atlantic, 550 U.S. at 545, held that "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Thus, the assertions in the complaint must be enough to "state a claim to relief that is plausible on its face," id. at 570, meaning that the facts alleged "allow[] the court to draw the reasonable inference that the defendant is liable for the conduct alleged."  Iqbal, 129 S. Ct. at 1949; see also, Phillips v. County of Allegheny, 515 F.3d 224, 234-35 (3d Cir. 2008) (In order to survive a motion to dismiss, the factual allegations in a complaint must "raise a reasonable expectation that discovery will reveal evidence of the necessary element," thereby justifying the advancement of "the case beyond the pleadings to the next stage of litigation.").

When assessing the sufficiency of a complaint, the Court must distinguish factual contentions – which allege behavior on the part of the defendant that, if true, would satisfy one or more elements of the claim asserted – from "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."  Iqbal, 129 S. Ct. at 1949.  Although for the purposes of a motion to dismiss the Court must assume the veracity of the facts asserted in the complaint, it is "not bound to accept as true a legal conclusion couched as a factual allegation." Id. at 1950.  Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." Id.

**B.     ERISA Preemption**

"Congress enacted ERISA to 'protect . . . the interests of participants in employee benefit plans and their beneficiaries' by setting out substantive regulatory requirements for employee benefit plans and to 'provid[e] for appropriate remedies, sanctions, and ready access to the Federal courts.'"  <u>Aetna Health Inc. v. Davila</u>, 542 U.S. 200, 208 (2004) (quoting  29 U.S.C. § 1001(b)).  "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans."  <u>Id.</u>  "To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern."  <u>Id.</u> (quotation and citations omitted).

"Therefore, any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the clear congressional intent to make the ERISA remedy exclusive and is therefore pre-empted."  <u>Id.</u> at 209 (citations omitted).  Indeed, "the ERISA civil enforcement mechanism is one of those provisions with such extraordinary pre-emptive power that it converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule."  <u>Id.</u> (quotation omitted).

ERISA § 502(a)(1)(B) provides that "[a] civil action may be brought—(1) by a participant or beneficiary—. . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan."  29 U.S.C. § 1132(a)(1)(B).  Consequently, "[u]nder the civil enforcement provisions of § 502(a), a plan participant or beneficiary may sue to recover benefits due under the plan, to enforce the participant's rights under the plan, or to clarify rights to future benefits."  <u>Pilot Life Ins. Co. v. Dedeaux</u>, 481 U.S. 41, 53 (1987).  "Relief may take the form of accrued

benefits due, a declaratory judgment on entitlement to benefits, or an injunction against a plan administrator's improper refusal to pay benefits."  Id.

Here, it is undisputed that the Plan is part of an employee benefit plan that is governed by ERISA.  It is also undisputed that all of Montvale's state law claims in the Complaint arise out of Defendants' failure to pay the reasonable and customary rate for medical services.  These are precisely the types of claims that are wholly preempted by ERISA's civil enforcement provision. See Pryzbowski v. U.S. Healthcare, Inc., 245 F.3d 266, 272 (3d Cir. 2001) ("[C]laims challenging the quantum of benefits due under an ERISA-regulated plan are completely preempted under § 502(a)'s civil enforcement scheme." (citation omitted)).  Consequently, Montvale's claims are preempted by ERISA and must be dismissed.

**C.     Exhaustion**

Defendants further argue that the Complaint should be dismissed without granting Montvale leave to reassert its claims under ERISA because it failed to exhaust the mandatory administrative appeals process under the SPD, and therefore any attempt to amend the Complaint to assert ERISA claims would be futile.  Montvale argues that (1) the SPD's administrative appeals process was voluntary, and Defendants' are therefore required to waive their exhaustion defense; (2) even if the Court finds the SPD's administrative appeals process to be mandatory, Montvale exhausted two levels of appeals; and (3) further appeals would have been futile.

"Except in limited circumstances, a federal court will not entertain an ERISA claim unless the plaintiff has exhausted the remedies available under the plan."  Harrow v. Prudential Ins. Co. of Am., 76 F. Supp. 2d 558, 561 (D.N.J. 1999) (citations omitted).  One such circumstance is where the plan "offers voluntary levels of appeal," in which case "[t]he plan waives any right to assert that a claimant has failed to exhaust administrative remedies because

the claimant did not elect to submit a benefit dispute to any such voluntary level of appeal provided by the plan."  29 C.F.R. § 2560.503-1(c)(3)(i).

Under the SPD's two-level appeals process, Montvale must first submit an appeal to Horizon, who will render a decision within thirty days.  If Montvale is "dissatisfied with the decision of the first appeal, [it] may submit a second appeal to the Board of Trustees within 180 days of the receipt of the first decision."  (Baker Cert., Ex. A.)  The Board of Trustees will render a decision "within thirty days of receipt for the second level of appeal."  (Id.)

This language clearly requires Montvale to first appeal to Horizon and then to the Board of Trustees before filing a lawsuit for benefits.  Montvale makes much of the fact that the Fund states that a claimant "*may* submit a second appeal to the Board of Trustees."  However, use of the word *may* in this context does not render the second-level appeal optional; rather it merely presents claimants with the next step in the administrative appeal process, should they want to pursue it.   Moreover, the SPD expressly prevents parties from bringing "a lawsuit to obtain benefits until after you have requested a review and a final decision has been reached on review. . . ."  (Id.)  Consequently, the Fund's administrative appeals process is clearly mandatory, and Defendants' need not waive any defenses regarding the failure to exhaust administrative remedies.

Montvale's argument that the Court should find that it exhausted the administrative appeals process because it "exhausted two levels of review" and "substantially complied with the internal appeals procedures" (Pl.'s Br. 6) is unpersuasive.  There is no case law in this Circuit applying the doctrine of substantial compliance to the issue of whether a beneficiary satisfied its obligation to exhaust an administrative appeals process under an ERISA-governed benefit plan.[2]

---

[2] Courts have applied the doctrine of substantial compliance to the issue of whether an ERISA plan administrator complied with certain ERISA regulations, see, e.g., Nichols v.

Indeed, other courts have rejected such an application.  See Edwards v. Briggs & Stratton Retirement Plan, 639 F.3d 355, 363 (7th Cir. 2011) (beneficiary's "failure to file a timely administrative appeal from the Plan's initial denial of benefits is not excused on grounds of substantial compliance."); Brown v. J.B. Hunt Transp. Servs., Inc., No. 4:08CV00089, 2008 WL 4079822, at *2 (E.D.Ark. Aug. 28, 2008) (rejecting "Plaintiff's argument that substantial compliance satisfies a beneficiary's obligation to exhaust administrative remedies.").

Moreover, Montvale—a sophisticated medical services provider—offers no explanation why it failed to submit a second level appeal to the Board of Trustees in accordance with the SPD's clear terms and conditions.[3]  Thus, Montvale's submission of two appeals to Horizon does not exhaust Montvale's administrative remedies under ERISA.

Finally, Montvale's argument that it should be excused from exhaustion because further appeals would be futile is without merit.  "Whether to excuse exhaustion on futility grounds rests upon weighing several factors, including: (1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile."  Harrow v. Prudential Ins. Co. of Am.,

---

Prudential Ins. Co. of Am., 406 F.3d 98 (2d Cir. 2005), and whether a party properly designated a new beneficiary of an ERISA plan, see, e.g., Davis v. Combes, 294 F.3d 931 (7th Cir. 2002); BankAmerica Pension Plan v. McMath, 206 F.3d 821 (9th Cir. 2000).  To be sure, neither of these issues arises in this matter.

[3] Montvale suggests that Horizon had an obligation to either redirect the second level appeal to the Board of Trustees or tell Montvale that it filed that appeal with the wrong administrative body.  However, ERISA does not require parties to an administrative appeals process help claimants cure defective attempts to exhaust that process.  Moreover, here, Montvale had easy access to the SPD, as it was publicly available on the Fund's website.  And Montvale's citations to certain terms of the SPD in its appeal letters to Horizon suggests that Montvale was familiar with the SPD.

9

279 F.3d 244, 250 (3d Cir. 2002).  "Of course, all factors may not weigh equally."  Id.  However,

a plaintiff must make "a clear and positive showing of futility."  Id. at 249 (quotation and citation

omitted).

Here, the first factor weighs against Montvale because it carelessly filed a second appeal

with the wrong administrative body.  Similarly, the second factor weighs against Montvale

because it sought judicial review without appealing to the final administrative decision maker.

The third, fourth, and fifth factors weigh heavily against Montvale because it offers no evidence

of (1) a fixed policy denying benefits; (2) Defendants' failure to comply with their own internal

administrative procedures; or (3) any testimony of plan administrators that a second level appeal

to the Board of Trustees would be futile.  Furthermore, Montvale fails to provide any evidence

outside of these factors suggesting that an appeal to the Board of Trustees would have been

denied.  Therefore, Montvale's Complaint is dismissed with prejudice.[4]

### III.  CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED.  Montvale's

Complaint is dismissed in its entirety with prejudice.

The Court will enter an order implementing this opinion.

---

[4] To the extent Montvale seeks to assert claims premised on Horizon's failure to provide a copy of the Fund's SPD in response to its request in the second level appeal, those claims must fail.  ERISA provides that "[a]ny administrator . . . who fails or refuses to comply with a request for any information which such administrator is required . . . to furnish to a participant or beneficiary . . . within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper."  29 U.S.C. § 1132 (c)(1)(A), (B).  Horizon's failure to provide a copy of the SPD to Montvale is not actionable because Horizon is not the Fund's administrator; rather the Board of Trustees is clearly designated as the administrator.  Furthermore, Montvale's request for the SPD is curious because, as previously discussed, the SPD is publicly available on the Fund's website, and Montvale appears to cite to it in both its first and second level appeal letters to Horizon.

   **/s/ Dickinson R. Debevoise**
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated: December 14, 2012